1  RICHARD JAFFE, ESQ.
   Subject to pro hac vice admission
2  428 J Street, 4th Floor
3  Sacramento, California 95814
   Tel: 916-492-6038
4  Fax: 713-626-9420
5  Email: rickjaffeesquire@gmail.com

6  ROBERT F. KENNEDY JR., ESQ.
7  Subject to pro hac vice admission
   48 Dewitt Mills. Rd.
8  Hurley, NY 12433
9  Tel: 845-481-2622

10 TODD S. RICHARDSON, ESQ.
   Law Offices of Todd S Richardson, PLLC
11 604 Sixth Street
   Clarkston, WA 99403
12 Tel: 509-758-3397
13 Fax: 509-758-3399
   WSBA 30237
14 Attorneys for Plaintiffs

15
16                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF WASHINGTON
17

18 | JOHN STOCKTON, RICHARD | Case No: _____ |
19 | EGGLESTON, M.D., THOMAS T. SILER, | |
   | M.D., DANIEL MOYNIHAN, M.D., | **COMPLAINT FOR INJUNCTIVE** |
20 | CHILDREN'S HEALTH DEFENSE, a not- | **AND DECLARATORY RELIEF** |
21 | for-profit corporation, AND JOHN AND | **UNDER 42 U.S.C. SECTION 1983** |
   | JANE DOES, M.Ds 1-50, | |
22 |             Plaintiffs, | |
23 |        v. | |
24 | | |
   | ROBERT FERGUSON, Attorney General | |
25 | of the State of Washington, AND KYLE S. | |
26 | KARINEN, Executive Director of the | |
   | Washington Medical Commission, | |
27 |             Defendants. | |
28

                            COMPLAINT
                                1

Plaintiffs by their undersigned counsel allege against the Defendants as follows:

## JURISDICTION AND VENUE

**1.**     This is a 42 U.S.C. section 1983 civil rights action for which this Court has federal question jurisdiction under 28 U.S.C. section 1331. This Court has authority to grant the requested injunctive relief under 28 U.S.C. section 1343; the requested declaratory relief under 28 U.S.C. sections 2201 and 2202; and costs and attorneys' fees under 42 U.S.C. section 1988 (b).

**2.**     Venue is proper in the federal Eastern District of Washington pursuant to 28 U.S.C. section 1391 (b) (2). Plaintiffs, John Stockton and Richard Eggleston, M.D. live in this district and as such, the First Amendment free speech restrictions and injury complained of in this lawsuit occurred in this District.

## INTRODUCTION AND SUMMARY OF ACTION

**3.**     Since declaring that it would sanction physicians who speak out against the mainstream Covid narrative in September 2021, the Washington Medical Commission ("Commission") has investigated, prosecuted and/or sanctioned approximately 60 physicians. These cases are at least in part based on what in First Amendment parlance is called pure or soapbox speech, meaning written or verbal communications to the public (as opposed to a physician's communications to an individual patient as part of a doctor/patient interaction).

**4.**     There is no place for the government, under the guise of regulating physicians and protecting the public, to censure, restrict or sanction the content and viewpoint of the publicly expressed views of physicians on Covid or any other subject, just because the government does not like the message or thinks it is wrong.

**5.**     Going back seventy-years, every judge and Supreme Court justice who has written on professional soapbox speech has stated that it is fully protected by the First Amendment and/or said that it cannot be the subject of government regulation or

restriction.[1] Further, the public's protected First Amendment right to receive

---

[1] "Where the personal nexus between professional and client does not exist, and the speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command that 'Congress shall make no law… abridging the freedom of speech, or the press." *Lowe v. SEC*, 472 U.S. 181, 232 (1985) (Justice White's concurring opinion), citing and restating Justice Jackson's concurring opinion in *Thomas v. Collins*, 323 U.S. 516, 545-46 (1945). "[I]t is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us. (citation omitted) Nor would I. Very many are the interests which the state may protect against the practice of an occupation, very few are those it may assume to protect against the practice of propagandizing by speech or press. These are thereby left great range of freedom.  * * *This liberty was not protected because the forefathers expected its use would always be agreeable to those in authority or that its exercise always would be wise, temperate, or useful to society. As I read their intentions, this liberty was protected because they knew of no other way by which free men could conduct representative democracy." Both of which opinions were cited with approval (among other authorities for the same principle) in *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014) *abrogated on other grounds* by *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*").

COMPLAINT

3

information is equally firmly affixed in the Constitutional firmament.[2]

**6.**     The purpose of this lawsuit is to protect the right of physicians to speak, and the right of the public to hear their message. The goal is to stop the Commission from investigating, prosecuting or sanctioning physicians who speak out in public against the so-called "mainstream Covid narrative," i.e., the succession of public health edicts put out by the CDC and repeated by the primary news outlets, which has caused the public to lose trust in the public health authorities, which has caused the CDC to repeatedly apologize and promise to do better.[3]

---

[2]     "It is well established that the right to hear — the right to receive information — is no less protected by the First Amendment than the right to speak. (citations omitted) Indeed, the right to hear and the right to speak are flip sides of the same coin. As Justice Brennan put it pithily, "It would be a barren marketplace of ideas that had only sellers and no buyers." *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002).

[3]     *See, e.g.*, Nicholas Florko, *Public trust in CDC, Fauci, and other top health officials is evaporating, poll finds*, STATNEWS.COM (Sept. 10, 2020), https://www.statnews.com/2020/09/10/trust-cdc-fauci-evaporating/ [Redfield]; Selena Simmons-Duffin, *Poll Finds Public Health Has A Trust Problem*, NPR.ORG, health (May 13, 2021), https://www.npr.org/2021/05/13/996331692/poll-finds-public-health-has-a-trust-problem [Walensky]; *The CDC is beholden to corporations and lost our trust. We need to start our own The People's CDC*, THEGUARDIAN.COM, opinion (Apr. 3, 2022), https://www.theguardian.com/commentisfree/2022/apr/03/peoples-cdc-covid-guidelines [Walensky]; *How to Make the CDC Matter Again*, BLOOMBERG.COM, Opinion (May 2, 2022) https://www.bloomberg.com/opinion/articles/2022-05-02/the-cdc-needs-reform-to-restore-public-trust-after-covid-19#xj4y7vzkg [Walensky]; Randy Aldridge, *CDC Announces Sweeping Changes to Restore Public Trust*, NORTH CAROLINA MEDICAL SOCIETY (Aug. 18, 2022), https://ncmedsoc.org/cdc-announces-sweeping-changes-to-restore-public-trust [Walensky]; Tina Reed, *Survey finds concern of political influence*

**7.** Four years ago, the pandemic swept over us; it officially ended a year ago. Assuming arguendo that there had been a compelling state interest to justify censoring health care professionals who disagree with the public health authorities' Covid narrative during the pandemic, it ceased with the end of the pandemic.

**8.** We urge the Court to stop the Commission's widespread and systematic violation of the First Amendment rights of physicians and the public at large, as quickly as possible, in accordance with First Amendment procedural remedies and then permanently, via permanent injunctive relief.

## THE PARTIES

**9.** Plaintiff John Stockton was born, raised, and educated locally. Except for an annual work-related relocation, he has spent his entire life in Spokane. He is actively involved in matters of public interest, and has been a vocal advocate against the mainstream Covid narrative. During the pandemic, he started co-hosting a podcast which deals with a wide variety of subjects, including Covid, health policy, the rights of

---

*leads lack of trust in health agencies*, AXIOS.COM (May 7, 2023), https://www.axios.com/2023/03/07/trust-in-cdc-public-health-agencies ("too many conflicting recommendations"; "Private-sector influence on recommendations and policies" are the second and third most common reasons for lack of trust in the CDC) [Cohen]; NPR one year late, same tune: Sacha Pfeiffer, Megan Lim, Christopher Intagliata, *The new CDC director outlines 3 steps to rebuild trust with the public*, NPR.ORG (Aug. 2, 2023), https://www.npr.org/2023/08/02/1191302954/the-new-cdc-director-outlines-3-steps-to-rebuild-trust-with-the-public [Cohen]; Chelsea Cirruzzo, *The CDC wants your trust back: It'll 'take time to rebuild,'* POLITICO.COM (Sept. 16, 2023), https://www.politico.com/news/2023/09/16/cdc-director-public-trust-00116348 [Cohen].

COMPLAINT
5

individuals to make their own health and medical decisions, and sports.[4]

10. Plaintiff Stockton sues on his own behalf and advocates for all Washingtonians who share his belief that people have the First Amendment right to hear the public soapbox speech of Washington licensed physicians who disagree with the mainstream Covid narrative. The actions of the Defendants directly impinge on that right because, upon information and belief, one of the purposes of the Commission's prosecution of physicians for offering public opinions that are not in harmony with the Commission's approved messaging is to silence dissent.

11. Plaintiff Richard Eggleston, M.D. is a retired ophthalmologist who resides in this district in Clarkston, Washington. He is currently the subject of a Medical Commission administrative proceeding. He has been active in trying to assert his Constitutional rights: He was a plaintiff in a case in this district captioned *Wilkinson v. Ferguson*. He is also the plaintiff in an action captioned *Eggleston v. Washington Medical Commission* which is a Washington State constitutional challenge to the Commission's prosecution against him. (Described in more detail on page 12, footnote 8.)

12. Plaintiff Eggleston sues as a licensed physician currently being prosecuted by the Commission for the public dissemination of information contrary to the government approved Covid narrative. However, he also sues and has standing to sue as a Washington resident whose right to hear information from other Washington licensed physicians is being chilled and censored by the Defendants' actions.

13. Plaintiff Thomas T. Siler, M.D. is a retired physician who is the subject of

---

[4] Plaintiff Stockton was a well-regarded Gonzaga basketball player, and followed that up with a 19-year NBA career as a point guard. He was elected to the Hall of Fame twice (once as an individual player and as part of the two Olympic Dream Teams). Although he retired more than 20 years ago, many of his NBA records still stand, including the most season assists and steals.

COMPLAINT

6

a Commission prosecution based on several posts which appeared on the internet in which he challenged aspects of the approved government Covid narrative, as described more fully *infra*. Dr. Siler sues as a physician under attack by the Defendants for expressing his protected First Amendment speech to the public. And like Plaintiff Eggleston, he also sues as a member of the public whose First Amendment right to hear the views of other Washington licensed physicians is being chilled by the Defendants' actions.

14. Plaintiff Daniel Moynihan, M.D. is a licensed, retired board-certified Family Medicine physician who resides in southwest Washington. He is a volunteer for Plaintiff Children's Heath Defense, Washington Chapter. He is not currently being prosecuted for speaking out in public against the mainstream Covid narrative. However, the actions by the Commission chill his willingness to speak out in public on Covid and against the Commission-sanctioned narrative. Further, because of Defendants' prosecution of other physicians, his access to information about Covid from knowledgeable Washington licensed physicians is being infringed.

15. Plaintiffs John and Jane Does, MD are the other Washington licensed physicians who are currently the subject of Commission investigations and prosecutions in whole or in part based on their speaking out in public against the Commission-approved Covid narrative. Their names are unknown to Plaintiffs' counsel, but are known to the Defendants and discoverable or contactable pursuant to an appropriate court order.[5]

---

[5] Two caveats or limitations to the inclusion of the John and Jane Doe MDs should be noted. First, these plaintiffs do not include any physician against whom the Defendants have obtained a final order of discipline which has either not been appealed or for which the appeal has resolved or terminated. Second, for John and Jane Doe physicians whose statement of charges allege other professional misconduct (beyond the First Amendment issues raised in this case), Plaintiffs seek no relief regarding such

COMPLAINT
7

**16.** Plaintiff Children's Health Defense ("CHD") is a 501(c)(3) non-profit corporation whose mission is to end childhood health epidemics by working aggressively to eliminate harmful exposures, hold those responsible accountable, and to establish safeguards to prevent future harm. Its mission also includes advocating for medical freedom, bodily autonomy, and an individual's right to receive the best information available based on a physician's best judgment.

**17.** Among other things, CHD educates the public concerning the negative risk-benefit profile of the Covid shots for healthy children, which concerns have caused some countries (which have had the best pandemic response outcomes) to stop recommending Covid vaccination or boosters, or both, for healthy children (*see* recent recommendations of Denmark, Sweden, the UK, and the European Medicines Agency. *See, e.g.*, Leonhardt, D. (February 13, 2024). *Covid Shots for Children. Much of the world has decided that most young children don't need to receive Covid booster shots. The U.S. is an outlier*, https://www.nytimes.com/2024/02/13/briefing/covid-boosters-children-cdc.html.

**18.** CHD has a Washington chapter and it and CHD national have members and volunteers including Washington licensed physician Plaintiff Daniel Moynihan, MD who wish to speak out about in public about the latest studies about the Covid booster shots, as well as information about the off-label treatments for Covid. Among their members are Washington parents who want to receive objective, non-coerced information from physicians, including Washington licensed physicians about the risk profile of the Covid vaccines for the current boosters. CHD has approximately 2,000

---

other conduct, and this lawsuit does not impact the continued prosecution of these plaintiffs on matters unrelated to the First Amendment based charges. Upon information and belief, most of the Commission's cases fall in this category. The latest information Plaintiffs have is as of early to mid-2023, that there were approximately 60 prosecutions which contained a charge of Covid misinformation to the public.

members who live in the state of Washington.

19. Upon information and belief, the Commission's actions in prosecuting physicians for speaking out against the mainstream Covid narrative has a chilling effect and will dissuade many physicians from providing their candid opinions, which creates a risk of self-censorship significantly impairing the ability of CHD physicians to provide such information, which will militate against CHD lay members in Washington from receiving such nonconforming opinions from their physicians. An actual and justiciable controversy exists therefore between Plaintiff CHD and Defendants.

20. In addition, CHD Washington chapter is actively involved in protecting the rights of physicians to speak out against the approved Covid narrative. It has weekly meetings and interfaces with physicians under attack and their attorneys. It supports efforts to disseminate information which is not consistent with, not highlighted or suppressed by the medical authorities.[6] In addition, the Washington chapter acts as a clearing house for information and activities about the Commission which impact Washington residents who share the same outlook as CHD and its members.

21. Plaintiff CHD and its Washington chapter (which is not a separate legal entity) sue in its own capacity and on behalf of its constituent members residing in Washington who have been and will continue to be adversely affected by Defendants' actions.

22. CHD members would have standing to sue. The interests which CHD seeks to protect are germane to and go to the heart of CHD's purpose. Neither the claims asserted nor the relief requested requires the participation of CHD's individual members in this lawsuit.

23. To the best of CHD's knowledge, none of its Washington physician

---

[6]    *See, e.g.,* Children's Health Defense: Washington Chapter (January 26, 2024). *Vax Injury Recovery Protocols: A Success Story.* https://wa.childrenshealthdefense.org/an-informed-life-radio/vax-injury-recovery-protocols-a-success-story/.

COMPLAINT

9

members are subject to investigation or prosecution by the Defendants for Covid misinformation to the public.

**24.** Defendant Robert Ferguson is the Washington Attorney General. His office and his staff attorneys represent the Commission in prosecuting physicians in disciplinary cases. As such, the Defendant can effectuate any injunction sought and issued in this action. No compensatory damages are being sought from the Defendant, individually or in his official capacity.

**25.** Kyle S. Karinen is the Commission's executive director and oversees its administrative staff, including the staff which investigates and charges physicians with misconduct. As such, the Defendant has the legal authority to effectuate an injunction sought and issued by this Court. No compensatory damages are being sought from this Defendant individually or in his official capacity.

### FACTUAL BACKGROUND

**Origins of The Nationwide and Washington Covid Misinformation Disciplinary Campaign**

**26.** By press release dated July 21, 2021, the Federation of State Medical Boards (the "Federation")[7] issued the following press release:

> Physicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards, including the suspension or revocation of their medical license. Due to the specialized knowledge and training, licensed physicians possess a high

---

[7] According to its website, "The Federation of State Medical Boards represents the state medical and osteopathic regulatory boards – commonly referred to as state medical boards – within the United States, its territories and the District of Columbia. It supports its member boards as they fulfill their mandate of protecting the public's health, safety and welfare through the proper licensing, disciplining, and regulation of physicians and, in most jurisdictions, other health care professionals." *About FSMB*, FEDERATION OF STATE MEDICAL BOARDS, https://www.fsmb.org/about-fsmb/.

COMPLAINT
10

degree of public trust and therefore have a powerful platform in society, whether they recognize it or not. They also have an ethical and professional responsibility to practice medicine in the best interests of their patients and must share information that is factually, scientifically grounded and consensus driven for the betterment of public health. Spreading inaccurate COVID-19 vaccine information contradicts that responsibility, threatens to further erode public trust in the medical profession and thus puts all patients at risk.

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License At Risk*, FEDERATION OF STATE MEDICAL BOARDS, News Releases (Jul. 29, 2021), https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-vaccine-misinformation-may-put-medical-license-at-risk/.

27. The Federation's press release was not accompanied by any kind of white paper or legal analysis which opined that a medical board could constitutionally sanction a licensee for speaking out in public on a matter of public importance, perhaps because for seventy-five years, justices of the Supreme Court and lower court judges, including in this federal circuit, have stated that such action by professional boards are unconstitutional. (*See* footnote 1 on page 3 *supra.*)

28. On September 22, 2021, the Commission voted to adopt a guidance policy similar but broader than the Federation's press release, suggesting that the Commission could discipline physicians for public information beyond the Covid 19 vaccines. That policy is still in effect as of the date of the filing of this action. *COVID-19 Misinformation*, WASHINGTON MEDICAL COMMISSION, https://wmc.wa.gov/sites/default/files/public/COVID-19/COVID-19%20Misinformation%20Position%20Statement.pdf (last accessed 3/6/24).

**The Commission's Prosecution of Plaintiffs Eggleston and Siler**

*Plaintiff Eggleston case:*

29. Plaintiff Richard Eggleston was a board-certified ophthalmologist until his retirement more than 10 years ago, but still maintains his Washington medical license.

30. In January 2021, Plaintiff entered a four-year contract with the *Lewiston*

COMPLAINT
11

*Tribune* to provide a conservative-oriented monthly opinion column, for the nominal sum of $10.00 per column. Plaintiff writes on a variety subjects. However, in 2021 most of his columns dealt with Covid and the Government's response to the pandemic. Plaintiff Eggleston opposes Covid mandates, believes, and opines that the risk benefit profile is unfavorable for some subsets of the population. He advocated in favor of off-label treatments such as Ivermectin, and against the lockdowns. In his columns, he often cites government statistics and given his take or opinions on the meaning of those statistics. His opinions are at odds with what is published in the mainstream media.

31. In fact, it was the purpose and objective of the publisher of the paper for Plaintiff to express his more conservative viewpoint to the paper's readership.

32. In or about late 2021, the Commission commenced an investigation concerning his opinion pieces and asked him to explain his views. He did so and related other of his opinions about the pandemic.

33. On August 4, 2022, the Commission charged Plaintiff with professional misconduct based on his opinion pieces published in the *Lewiston Tribune*, on the stated grounds that they constitute a violation of RCW 18.130. 180 (1) as an act of "moral turpitude, dishonesty, or corruption relating to the person's profession…." (13) Misrepresentation or fraud in any aspect of the conduct of the business of profession." and (18) "interference with an investigation or disciplinary proceeding by willful misrepresentation of facts before the disciplinary authority or its authorized representations…." The latter charge is based on Plaintiff's statements that he made in response to the Commission's request that he provide a response and justification for the positions he took in his opinion articles.[8]

---

[8] The Commission's hearing was scheduled to commence on May 23, 2023. However, after an Asotin County superior court denied Eggleston's motion for a preliminary injunction (*Eggleston v. Washington Medical Commission*, 23-0006902), a state appellate court commissioner stayed the hearing pending determination of the

COMPLAINT
12

**34.** By mutual agreement with the publisher of the *Lewiston Tribune*, after the Commission filed its statement of charges against him, Dr. Eggleston changed the manner of his writing about Covid. *See, e.g.*, his opinion pieces from January 2021, until February 2024:

https://www.lmtribune.com/search/?f=html&q=richard+eggleston&s=start_time&sd=desc&l=25&t=article%2Ccollection%2Cvideo%2Cyoutube&nsa=eedition.

**35.** The Commission's prosecution of him for the content and viewpoint of his opinion pieces has thus directly and irreparably injured his First Amendment free speech rights, as well as the First Amendment rights of the other Plaintiffs and all Washington residents who may want, but no longer have access to Plaintiff Eggleston's information and opinions on Covid health policy, the safety and efficacy of off-label drugs, as well as the harm caused by lockdowns.

*Plaintiff Siler's Case:*

**36.** Plaintiff Thomas T. Siler M.D. is a retired Washington physician.[9] From February to October 2021, he wrote a series of posts in AmericanThinker.com, which is self-described as a "community for the civil and thoughtful discussion of issues. AT is

---

appealability of the superior court's denial of a preliminary injunction to enjoin the hearing. However, the case is being returned to the Superior Court after the appellate court panel overturned the appellate court commissioner's determination that the case was amenable to discretionary review. (*Eggleston v. WMC,* Cause No. 397319). As of the date of the filing of this complaint, the state court action is pending. However, the state court case only contains a claim for relief under the Washington state Constitution's Free Speech clause.

[9] Dr. Siler had been board certified in internal medicine for several decades. However, his board certification was removed for Covid misinformation by the private certifying American Board of Internal Medicine, whose actions are not constrained by the First Amendment as the Defendants actions are.

COMPLAINT
13

not a chatroom; it is a discussion forum."

37. Dr. Siler's posts were about Covid, and the safety and efficacy of the mRNA shots (A Doctor's View about the New mRNA vaccine", February 15, 2021), ("What Questions Must We Ask About Vaccination for Children" 10/26/2021), and the efficacy of PCR testing. He also questioned the Covid narrative core principle, that the recommendations put out by the CDC were evidence based. (Plaintiff Siler's post can be found at: https://www.americanthinker.com/author/thomassiler/.)

38. Based on these discussion forum posts, the Commission investigated him and on October 23, 2023, charged him with professional misconduct under RCW 18.130. 180 (1) ("any act involving moral turpitude, dishonesty, or corruption relating the practice of the person's profession…." And (13) "Misrepresentation or fraud in any aspect of the conduct of the business or profession." The statement of charges alleges that some statements in these posts were made "reckless disregard of the truth that promulgated misinformation regarding the SARS-CoV-2 virus and treatments for the virus" (Statement of charges, page 1 para 1.5).

39. Upon information and belief, there is no Washington statute or code section which creates a physician disciplinable offense for recklessly disregarding the "truth" in a physician's public speech. The Commission may have borrowed the phrase from the heightened burden of proof for the civil defamation of a public figure.

**FIRST CLAIM FOR RELIEF**

**ALL PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT THAT DEFENDANTS' INVESTIGATION, PROSECUTION AND SANCTIONING OF PHYSICIANS FOR THEIR PUBLIC/SOAPBOX SPEECH VIOLATES THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT AND IS SUBJECT TO INJUNCTIVE RELIEF**

40. Plaintiffs repeat and reallege the foregoing allegations.

41. The First Amendment provides in relevant part: "Congress shall make no

law... abridging the freedom of speech." The First Amendment applies to actions by state agencies such as the Boards via the Fourteenth Amendment.

42. The individual physician plaintiffs and the Washington licensed physician members of organizational Plaintiffs CHD (including its Washington chapter), have a First Amendment right to express their views and criticisms of the mainstream Covid narrative to the public.

43. Plaintiff John Stockton, lay members of CHD and all Washington residents have the First Amendment right to hear the views of the three individually named physician plaintiffs, as well as any Washington licensed physician, even if the viewpoint is not consistent the with public health authorities' and the Commission's views on the safety and efficacy of the Covid shots, the use of off-label treatments for Covid and the efficacy of masking, or other Covid related topics.

44. The Defendants' investigation, prosecution, and sanctioning of physicians disseminating for so-called "Covid misinformation" to the public via the guise/pretext/transformation of protected speech into professional acts of moral turpitude, fraud or misrepresentation violates the First Amendment rights of physicians.

45. The Commission's tactic of transforming protected speech into medical board regulatable professional conduct is simply the latest iteration of the "professional speech doctrine" which has been rejected by the Supreme Court in *Nat'l Inst. Advocates & Life Advocates v. Becerra* ("*NIFLA*") 138 S. Ct. 2361, 2371-2373 (2018).

46. The Defendants' actions also violate the rights of all Plaintiffs to receive this First Amendment protected information.

47. The alleged First Amendment violations are subject to the Court's strict scrutiny because they are both content and viewpoint based. Assuming, arguendo, (if not counterfactually), there had been a compelling state interest to restrict physician soapbox speech, that compelling interest expired with the declared the end of the pandemic and the termination of the emergency status by the states.

**48.** Further, there is no evidence that Defendant Commission considered and rejected other less invasive methods to achieve its stated goal of protecting the public.

**49.** Based on the foregoing, the actions of the Defendants complained of herein violate the Plaintiffs' First Amendment rights which justifies declaratory and injunctive relief.

## SECOND CLAIM FOR RELIEF

**ALL PLAINTIFFS REQUEST FOR A DECLARATORY JUDGMENT THAT RCW 18.130. 180 (1) AND (13) ARE FACIALLY UNCONSTITUTIONALLY OVERBROAD AND SUBJECT TO INJUNCTIVE RELIEF**

**50.** Plaintiffs repeat and reallege the foregoing allegations.

**51.** The Defendants claim to have the statutory authority to reach Plaintiffs' (and all the Commission's licensees') pure/soapbox speech based on RCW 18.130. 180 (1) which provides it jurisdiction over an act of "moral turpitude, dishonesty, or corruption relating to the person's profession…" and (13) "Misrepresentation or fraud in any aspect of the conduct of the business or profession." Meaning that a licensee's expressing opinions about Covid, or asserting facts which the Commission decides are untrue is an act of moral turpitude, dishonesty, corruption, or fraud in the conduct of the business or profession.

**52.** Defendants' interpretation of RCW 18.130. 180 is unconstitutionally overbroad insofar as it reaches fully protected speech which is either a *per se* violation of the First Amendment or fails strict scrutiny. Plaintiffs seek a declaratory judgment and a preliminary and permanent injunction based on overbreadth principles in that the Defendants are unconstitutionally regulating fully protected speech which renders the purported statutory justification facially unconstitutional.

### THIRD CLAIM FOR RELIEF

**PLAINTIFFS EGGLESTON, SILER, AND MOYNIHAN REQUEST FOR A DECLARATORY JUDGEMENT THAT THE COMMISSION'S INTERPRETATION OF ITS LAWS (RCW 7.24.146, 34.05 ET SEC AND WAC 246-11-480) VIOLATE THEIR FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS AND REQUEST FOR INJUNCTIVE RELIEF**

53. Plaintiffs Eggleston, Siler and Moynihan repeat and reallege the foregoing allegations.

54. Based on the litigation in *Eggleston v. Washington Medical Commission*, ("WMC") Defendants assert that under Washington law, there is no pre-administrative hearing recourse to remedy the Commission's alleged violation of the physicians' free speech rights.

55. Specifically, Defendants argue that 1. Washington law does not permit a respondent in an administrative proceeding to file a declaratory judgment action under RCW 7.24.145, during the pendency of a Medical Commission administrative proceeding, 2. An administrative law judge in an RCW 34.05 *et. seq*. hearing does not have the statutory authority to rule on the constitutionality of an administrative agency's action under WAC 246-11-480 (4), and 3. The only recourse a physician has is to raise a constitutional claim after the administrative action is final and in an appeal in a superior court, notwithstanding the fact that Washington law provides an exception to the failure to exhaust administrative remedies per RCW 34.05. 534 (c)(1)-(3).

56. Assuming arguendo that the Defendants' interpretation of the above statutes and regulation is correct, those laws and rule violate the federal procedural and substantive due process rights of Plaintiffs Eggleston, Siler, Moynihan, and all Washington physicians.

57. Plaintiffs' First Amendment rights of free soapbox speech is a fundamental right. Free speech jurisprudence holds that the government's likely violation of First

Amendment rights constitutes irreparable injury, even for a short period of time, and is curable via a federal court preliminary injunction. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *S.O.C., Inc. v. County of Clark*, 152 F.3d. 1136, 1148 (9th Cir. 1998).

**58.**  State preliminary injunction jurisprudence (*Beauregard v. Wash. State Bar Ass'n,* 197 Wash.2d 67, 72, 480 P.3d 410, 414 (Wash. 2021) does not recognize, and in fact is inconsistent with the expeditious hearing and cessation of likely governmental First Amendment violations as established by *Elrod* and other federal cases.[10]

**59.**  First Amendment substantive rights and the process for protecting those rights allow and indeed require that upon the requisite showing of a First Amendment violation, the government infringement should be immediately enjoined pending a final decision on the merits.

**60.**  The state is not free to continue to violate Plaintiff physicians' fundamental rights by requiring the physician to justify his/her protected speech in a state administrative proceeding, thereby delaying the vindication of these rights until after the state has adjudicated what it has no right to judge. [11]

**61.**  Accordingly, the state court statutes and state preliminary injunction requirements violate procedural and substantive due process. The Defendants' actions also run afoul of the spirit if not the letter of pre-administrative hearing access to the courts which raise fundamental constitutional issues, per *Axon Enterprises v. FTC*, 143

---

[10]  "A party seeking preliminary injunctive relief must establish (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either have or will result in actual and substantial injury. (Citations omitted.)" *Beauregard v. Wash. State Bar Ass'n*, 197 Wash.2d at 72, 480 P.3d at 414 (Wash. 2021).

[11]  Pure speech does not lose its protection based on the allegation that it is false or misleading or even if it is false. *United States v. Alvarez*, 567 U.S. 709 (2012).

COMPLAINT
18

S. Ct. 890 (2023).[12]

**62.**     The individual physician plaintiffs seek declaratory relief, as well as preliminary and permanent injunctive relief based on the state law and state actions which violate the substantive and procedural due process rights of these Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE Plaintiffs seek judgment as follows:

1.     A declaration that the Defendants' investigation, prosecution, and sanctioning Washington physicians based on the physician's public/soapbox speech about the subject and viewpoint concerning Covid which is not consistent with the approved Covid narrative violates the First Amendment free speech rights of physicians and their listeners, and is unconstitutionally overbroad as set forth in the First and Second Claims for Relief.

2.     A preliminary and permanent injunction against the Defendants from

---

[12]     The *Axon* decision addressed the same basic problem as in this claim, namely the adjudication of a fundamental claim against an agency that only provides for consideration of that claim after the conclusion of the administrative process. "And—here is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in. Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it won before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful." *Id.* at 903-04.

COMPLAINT
19

initiating or continuing any investigation or prosecution of any Washington licensed physician, based on the written or verbal communications by physicians to the public, based on the First and Second Claims for Relief.

    3.    A declaration that the Defendants' interpretation of the Commission's statutes violates the substantive and procedural due process rights of Washington licensed physicians, and preliminary and permanent injunctive relief.

    4.    Attorneys' fees as allowed by law, and such other and further relief as the Court deems just and proper.

Dated: March 7, 2024

Respectfully submitted,

RICHARD JAFFE, ESQ.
Subject to pro hac vice admission
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
Email: rickjaffeesquire@gmail.com

ROBERT F. KENNEDY JR., ESQ.
Subject to pro hac vice admission
48 Dewitt Mills. Rd.
Hurley, NY 12433
Tel: 845-481-2622

_____
TODD S. RICHARDSON, ESQ.
Law Offices of Todd S Richardson, PLLC
604 Sixth Street
Clarkston, WA 99403
Tel: 509-758-3397
Fax: 509-758-3399
WSBA 30237

Attorneys for Plaintiffs