RICHARD JAFFE, ESQ.
Pro hac vice admitted
428 J Street, 4th Floor
Sacramento, California 95814
Tel: 916-492-6038
Fax: 713-626-9420
Email: rickjaffeesquire@gmail.com

ROBERT F. KENNEDY JR., ESQ.
Pro hac vice admitted
48 Dewitt Mills. Rd.
Hurley, NY 12433
Tel: 845-481-2622

TODD S. RICHARDSON, ESQ.
Law Offices of Todd S Richardson, PLLC
604 Sixth Street
Clarkston, WA 99403
Tel: 509-758-3397
Fax: 509-758-3399
WSBA 30237
Attorneys for Plaintiffs

HON. THOMAS O. RICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOHN STOCKTON, RICHARD EGGLESTON, M.D., THOMAS T. SILER, M.D., DANIEL MOYNIHAN, M.D., CHILDREN'S HEALTH DEFENSE, a not-for-profit corporation, AND JOHN AND JANE DOES, M.Ds 1-50,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT FERGUSON, in his official capacity as Attorney General of the State of Washington, AND KYLE S. KARINEN, in his official capacity as Executive Director of the Washington Medical Commission<br>Defendants. | **Case No: 2:24-cv-00071 TOR**<br><br>**FIRST AMENDED COMPLAINT** |

FIRST AMENDED COMPLAINT        - 1

Pursuant to F.R.Civ.Pro. 15 (a) (1), Plaintiffs by their undersigned counsel allege against the Defendants as follows:

**JURISDICTION AND VENUE**

1.     This is a 42 U.S.C. section 1983 civil rights action for which this Court has federal question jurisdiction under 28 U.S.C. section 1331. This Court has authority to grant the requested injunctive relief under 28 U.S.C. section 1343; the requested declaratory relief under 28 U.S.C. sections 2201 and 2202; and costs and attorneys' fees under 42 U.S.C. section 1988 (b).

2.     Venue is proper in the federal Eastern District of Washington pursuant to 28 U.S.C. section 1391 (b) (2). Plaintiffs, John Stockton and Richard Eggleston, M.D. live in this district and as such, the First Amendment free speech restrictions and injury complained of in this lawsuit occurred in this District.

**INTRODUCTION AND SUMMARY OF ACTION**

3.     Since declaring that it would sanction physicians who speak out against the mainstream Covid narrative in September 2021, the Washington Medical Commission ("Commission") has investigated, prosecuted and/or sanctioned as many as 60 physicians. These cases are at least in part based on what in First Amendment parlance is called pure or soapbox speech, meaning written or verbal communications to the public (as opposed to a physician's communications to an individual patient as part of a doctor/patient interaction).

4.     There is no place for the government, under the guise of regulating physicians and protecting the public, to censure, restrict or sanction the content and viewpoint of the publicly expressed views of physicians on Covid or any other subject, just because the government does not like the message or thinks it is wrong.

5.     Going back almost eighty years, every judge and Supreme Court justice who has written on professional soapbox speech has stated that it is fully protected by the First Amendment and/or said that it cannot be the subject of government regulation

FIRST AMENDED COMPLAINT      - 2

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

or restriction.[1] Further, the public's protected First Amendment right to receive information is equally firmly affixed in the Constitutional firmament.[2]

6.      The purpose of this lawsuit is to protect the right of physicians to speak, and the right of the public to hear their message. The goal is to stop the Commission from investigating, prosecuting or sanctioning physicians who speak out in public

---

[1]      [I]t is not the right, of the state to protect the public against false doctrine. The very purpose of the First Amendment is to foreclose public authority from assuming a guardianship of the public mind through regulating the press, speech, and religion. In this field every person must be his own watchman for truth, because the forefathers did not trust any government to separate the true from the false for us. (citation omitted) Nor would I. Very many are the interests which the state may protect against the practice of an occupation, very few are those it may assume to protect against the practice of propagandizing by speech or press. These are thereby left great range of freedom.  * * *This liberty was not protected because the forefathers expected its use would always be agreeable to those in authority or that its exercise always would be wise, temperate, or useful to society. As I read their intentions, this liberty was protected because they knew of no other way by which free men could conduct representative democracy.

*Thomas v. Collins*, 323 U.S. 516, 545-46 (1945). (J. Jackson concurrence) which was quoted and restated in Justice White's concurrence in *Lowe v. SEC,*472 U.S. 181, 232,  (1985). Justice White's opinion was cited with approval (among other authorities for the same principle) in *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014), *abrogated on other grounds* by *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*").

[2]      "It is well established that the right to hear — the right to receive information — is no less protected by the First Amendment than the right to speak. (citations omitted) Indeed, the right to hear and the right to speak are flip sides of the same coin. As Justice Brennan put it pithily, "It would be a barren marketplace of ideas that had only sellers and no buyers." *Conant v. Walters*, 309 F.3d 629, 643 (9th Cir. 2002).

FIRST AMENDED COMPLAINT        - 3

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

against the so-called "mainstream Covid narrative," i.e., the succession of public health edicts put out by the CDC and repeated by the primary news outlets interviewing experts who reinforce this narrative and which has resulted in loss of public trust in the public health authorities, which has caused the CDC to repeatedly apologize and promise to do better.[3]

---

[3]      *See, e.g.*, Nicholas Florko, *Public trust in CDC, Fauci, and other top health officials is evaporating, poll finds*, STATNEWS.COM (Sept. 10, 2020), https://www.statnews.com/2020/09/10/trust-cdc-fauci-evaporating/ [Redfield]; Selena Simmons-Duffin, *Poll Finds Public Health Has A Trust Problem*, NPR.ORG, health (May 13, 2021), https://www.npr.org/2021/05/13/996331692/poll-finds-public-health-has-a-trust-problem [Walensky]; *The CDC is beholden to corporations and lost our trust. We need to start our own The People's CDC*, THEGUARDIAN.COM, opinion (Apr. 3, 2022), https://www.theguardian.com/commentisfree/2022/apr/03/peoples-cdc-covid-guidelines [Walensky]; *How to Make the CDC Matter Again*, BLOOMBERG.COM, Opinion (May 2, 2022) https://www.bloomberg.com/opinion/articles/2022-05-02/the-cdc-needs-reform-to-restore-public-trust-after-covid-19#xj4y7vzkg [Walensky]; Randy Aldridge, *CDC Announces Sweeping Changes to Restore Public Trust*, NORTH CAROLINA MEDICAL SOCIETY (Aug. 18, 2022), https://ncmedsoc.org/cdc-announces-sweeping-changes-to-restore-public-trust [Walensky]; Tina Reed, *Survey finds concern of political influence leads lack of trust in health agencies*, AXIOS.COM (May 7, 2023), https://www.axios.com/2023/03/07/trust-in-cdc-public-health-agencies ("too many conflicting recommendations"; "Private-sector influence on recommendations and policies" are the second and third most common reasons for lack of trust in the CDC) [Cohen]; NPR one year late, same tune: Sacha Pfeiffer, Megan Lim, Christopher Intagliata, *The new CDC director outlines 3 steps to rebuild trust with the public*, NPR.ORG (Aug. 2, 2023), https://www.npr.org/2023/08/02/1191302954/the-new-cdc-director-outlines-3-steps-to-rebuild-trust-with-the-public [Cohen]; Chelsea Cirruzzo,

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

7.      Four years ago, the pandemic swept over us; it officially ended a year ago. Assuming arguendo that there had been a compelling state interest to justify censoring health care professionals who disagree with the public health authorities' Covid narrative during the pandemic, it ceased with the end of the pandemic.

8.       We urge the Court to stop the Commission's widespread and systematic violation of the First Amendment rights of physicians and the public at large, as quickly as possible, in accordance with First Amendment procedural remedies, and then permanently, via permanent injunctive relief.

**THE PARTIES**

**The Plaintiffs**

9.      Plaintiff John Stockton was born, raised, and educated locally. Except for an annual work-related relocation, he has spent his entire life in Spokane. He is actively involved in matters of public interest, and has been a vocal advocate against the mainstream Covid narrative. During the pandemic, he started co-hosting a podcast which deals with a wide variety of subjects, including Covid, health policy, the rights of individuals to make their own health and medical decisions, and sports.[4]

10.     Plaintiff Stockton sues on his own behalf and advocates for all Washingtonians who share his belief that people have the First Amendment right to hear the public soapbox speech of Washington licensed physicians who disagree with the

_____

*The CDC wants your trust back: It'll 'take time to rebuild,'* POLITICO.COM (Sept. 16, 2023), https://www.politico.com/news/2023/09/16/cdc-director-public-trust-00116348 [Cohen].

[4]      Plaintiff Stockton is a well-regarded Gonzaga basketball player, and followed that up with a 19-year NBA career as a point guard. He was elected to the Hall of Fame twice (once as an individual player and as part of the two Olympic Dream Teams). Although he retired more than 20 years ago, many of his NBA records still stand, including the most season assists and steals.

FIRST AMENDED COMPLAINT        - 5

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

mainstream Covid narrative. The actions of the Defendants directly effect, impinge and harm his First Amendment right to receive information from physicians like Plaintiffs Eggleston, Siler and Moynihan by the Defendants attempt to censor their public speech.

11.    Plaintiff Richard Eggleston, M.D. is a retired ophthalmologist who resides in this district, in Clarkston, Washington. He is currently the subject of a Medical Commission administrative proceeding. He has been active in trying to assert his Constitutional rights:  He was a plaintiff in a case in this district captioned *Wilkinson v. Ferguson*. He is also the plaintiff in an action captioned *Eggleston v. Washington Medical Commission* which is a Washington State constitutional challenge to the Commission's prosecution against him. (Described in more detail on page 13, footnote 8. *infra*).

12.    Plaintiff Eggleston has standing to sue as a licensed physician currently being prosecuted by the Commission for the public dissemination of information contrary to the government approved Covid narrative. However, he also sues and has standing to sue as a Washington resident as his right to hear information from other Washington licensed physicians is being impaired by the Defendants' actions.

13.    Plaintiff Thomas T. Siler, M.D. is a retired physician who is the subject of a Commission prosecution based on several posts which appeared on the internet in which he challenged aspects of the approved government Covid narrative, as described more fully *infra*. Dr. Siler sues as a physician under attack by the Defendants for expressing his protected First Amendment speech to the public. And like Plaintiff Eggleston, he also sues as a member of the public whose First Amendment right to hear the views of other Washington licensed physicians is being impaired and injured by the Defendants' actions in prosecuting physicians for their public speech.

14.    Plaintiff Daniel Moynihan, M.D. is a licensed, retired board-certified Family Medicine physician who resides in southwest Washington. He is a volunteer for Plaintiff Children's Heath Defense, Washington Chapter. He is not currently being prosecuted for speaking out in public against the mainstream Covid narrative. However,

FIRST AMENDED COMPLAINT        - 6

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

1    the actions by the Commission chill his willingness to speak out in public on Covid and

2    against the Commission-sanctioned narrative. Plaintiff asserts his standing rights to sue

3    under the "hold your tongue and sue standing principle."  Further, Defendants'

4    prosecution of other physicians restricts his access to information about Covid from

5    knowledgeable Washington licensed physicians, thereby infringing his First

6    Amendment right to receive information, and in particular the information and opinions

7    of Washington physicians like Plaintiffs Eggleston and Siler.

8           15.    Plaintiffs John and Jane Does, MD are the other Washington licensed

9    physicians who are currently the subject of Commission investigations and prosecutions

10    in whole or in part based on their speaking out in public against the Commission-

11    approved Covid narrative. Their names are unknown to Plaintiffs' counsel, but are

12    known to the Defendants and discoverable or contactable pursuant to an appropriate

13    court order.[5]

14           16.    Plaintiff Children's Health Defense ("CHD") is a 501(c)(3) non-profit

15    corporation whose mission is to end childhood health epidemics by working

16    aggressively to eliminate harmful exposures, hold those responsible accountable, and to

17    

---

18    [5]    Two caveats or limitations to the inclusion of the John and Jane Doe MDs should

19    be noted. First, these plaintiffs do not include any physician against whom the

20    Defendants have obtained a final order of discipline which has either not been appealed

21    or for which the appeal has resolved or terminated. Second, for John and Jane Doe

22    physicians whose statement of charges allege other professional misconduct (beyond the

23    First Amendment issues raised in this case), Plaintiffs seek no relief regarding such

24    other conduct, and this lawsuit does not impact the continued prosecution of these

25    plaintiffs on matters unrelated to the First Amendment based charges. Upon information

26    and belief, most of the Commission's cases fall in this category. The latest information

27    Plaintiffs have is as of early to mid-2023, that there were approximately 60 prosecutions

28    which include or may include a charge of Covid misinformation to the public.

FIRST AMENDED COMPLAINT        - 7

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

establish safeguards to prevent future harm. Its mission also includes advocating for medical freedom, bodily autonomy, and an individual's right to receive the best information available based on a physician's best judgment.

17.    Among other things, CHD educates the public concerning the negative risk-benefit profile of the Covid shots for healthy children, which concerns have caused some countries (which have had the best pandemic response outcomes) to stop recommending Covid vaccination or boosters, or both, for healthy children (*see* recent recommendations of Denmark, Sweden, the UK, and the European Medicines Agency. *See, e.g.*, Leonhardt, D. (February 13, 2024). *Covid Shots for Children. Much of the world has decided that most young children don't need to receive Covid booster shots. The U.S. is an outlier*, https://www.nytimes.com/2024/02/13/briefing/covid-boosters-children-cdc.html.

18.    CHD has a Washington chapter and it and CHD national have members and volunteers including Washington licensed physician Plaintiff Daniel Moynihan, MD who wish to speak out about in public about the latest studies about the Covid booster shots, as well as information about the off-label treatments for Covid. Among their members are Washington parents who want to receive objective, non-coerced information from physicians, including Washington licensed physicians about the risk profile of the Covid vaccines for the current boosters. CHD has approximately 2,000 members who live in the state of Washington.

19.    Upon information and belief, the Commission's actions in prosecuting physicians for speaking out against the mainstream Covid narrative has a chilling effect and will dissuade many physicians from providing their candid opinions, which creates a risk of self-censorship significantly impairing the ability of CHD's physician members to provide such information, which will militate against CHD lay members in Washington from receiving such nonconforming opinions from their physicians. An actual and justiciable controversy exists therefore between Plaintiff CHD and Defendants.

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

20.    In addition, CHD Washington chapter is actively involved in protecting the rights of physicians to speak out against the approved Covid narrative. It has weekly meetings and interfaces with physicians under attack and their attorneys. It supports efforts to disseminate information which is not consistent with, not highlighted or suppressed by the medical authorities.[6] In addition, the Washington chapter acts as a clearing house for information and activities about the Commission which impact Washington residents who share the same outlook as CHD and its members.

21.    Plaintiff CHD and its Washington chapter (which is not a separate legal entity) sue in its own capacity and on behalf of its constituent members residing in Washington who have been and will continue to be adversely affected by Defendants' actions.

22.    CHD members would have standing to sue. The interests which CHD seeks to protect are germane to and go to the heart of CHD's purpose. Neither the claims asserted nor the relief requested requires the participation of CHD's individual members in this lawsuit.

23.    To the best of CHD's knowledge, none of its Washington physician members are subject to investigation or prosecution by the Defendants for Covid misinformation to the public.

24.    Finally, the above allegations about CHD national are substantially similar to the allegations made by CHD in a substantially similar First Amendment Covid misinformation case against the Medical Board of California. The district court held that those allegations satisfied standing requirements. *See Hoeg v. Newsom*, 2:22-cv-01980 WBS AC (E.D. Cal. Jan. 25, 2023) (pages 14-15).

---

[6]    *See, e.g.,* Children's Health Defense: Washington Chapter (January 26, 2024). *Vax Injury Recovery Protocols: A Success Story.* https://wa.childrenshealthdefense.org/an-informed-life-radio/vax-injury-recovery-protocols-a-success-story/.

FIRST AMENDED COMPLAINT        - 9

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

**The Defendants**

25.    Defendant Robert Ferguson is the Washington Attorney General, and is being sued in his official capacity for declaratory and injunctive only.  "As chief legal officer, the Attorney General leads a team of attorneys who represent state clients and the public interest as directed under state law." *Office Information*, WASHINGTON STATE OFFICE OF THE ATTORNEY GENERAL, https://www.atg.wa.gov/office-information#:~:text=As%20chief%20legal%20officer%2C%20the,as%20directed%20under%20state%20law.&text=The%20Office%20of%20the%20Attorney,the%20rights%20of%20its%20people. According to its website, "The Office of the Attorney General will provide excellent, independent, and ethical legal services to the State of Washington and protect the rights of its people."

26.    Defendant Ferguson's office and by his staff attorneys represent the Commission in its prosecution of physicians in disciplinary cases. As such, the Defendant can effectuate any injunction sought and issued in this action, by stopping his legal staff from prosecuting physicians for their protected speech.

27.    No compensatory damages are being sought from the Defendant, individually or in his official capacity, and there is no request for a jury trial as this case is for equitable relief only.

28.    Kyle S. Karinen is the Commission's executive director and is being sued in his official capacity only for declaratory and injunctive relief, since he oversees the Commission's administrative staff, including the staff which investigates and charges physicians with misconduct. As such, the Defendant has the legal authority to effectuate an injunction sought and issued by this Court. No compensatory damages are being sought from this Defendant individually or in his official capacity.

## FACTUAL BACKGROUND

### Origins of The Nationwide and Washington Covid Misinformation Disciplinary Campaign

29.    On July 21, 2021, the Federation of State Medical Boards (the

FIRST AMENDED COMPLAINT        - 10

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

"Federation")[7] issued the following press release:

> Physicians who generate and spread COVID-19 vaccine misinformation or disinformation are risking disciplinary action by state medical boards, including the suspension or revocation of their medical license. Due to the specialized knowledge and training, licensed physicians possess a high degree of public trust and therefore have a powerful platform in society, whether they recognize it or not. They also have an ethical and professional responsibility to practice medicine in the best interests of their patients and must share information that is factually, scientifically grounded and consensus driven for the betterment of public health. Spreading inaccurate COVID-19 vaccine information contradicts that responsibility, threatens to further erode public trust in the medical profession and thus puts all patients at risk.

*FSMB: Spreading Covid-19 Vaccine Misinformation May Put Medical License At Risk*, FEDERATION OF STATE MEDICAL BOARDS, News Releases (Jul. 29, 2021), https://www.fsmb.org/advocacy/news-releases/fsmb-spreading-covid-19-vaccine-misinformation-may-put-medical-license-at-risk/.

30.    The Federation's press release was not accompanied by any kind of white paper or legal analysis which opined that a medical board could constitutionally sanction a licensee for speaking out in public on a matter of public importance, perhaps because for almost eighty years, justices of the Supreme Court and lower court judges, including in this federal circuit, have stated that such action by professional boards are unconstitutional. (*See* footnote 1 on page 3 *supra*.)

---

[7]    According to its website, "The Federation of State Medical Boards represents the state medical and osteopathic regulatory boards – commonly referred to as state medical boards – within the United States, its territories and the District of Columbia. It supports its member boards as they fulfill their mandate of protecting the public's health, safety and welfare through the proper licensing, disciplining, and regulation of physicians and, in most jurisdictions, other health care professionals." *About FSMB*, FEDERATION OF STATE MEDICAL BOARDS, https://www.fsmb.org/about-fsmb/.

FIRST AMENDED COMPLAINT        - 11

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

31.     On September 22, 2021, the Commission voted to adopt a guidance policy similar but broader than the Federation's press release, suggesting that the Commission could discipline physicians for public information beyond Covid 19. That policy is still in effect as of the date of the filing of this action. *COVID-19 Misinformation*, WASHINGTON MEDICAL COMMISSION, https://wmc.wa.gov/sites/default/files/public/COVID-19/COVID-19%20Misinformation%20Position%20Statement.pdf (last accessed 3/6/24).

32.     Upon information and belief, the Commission's adoption of its Covid misinformation policy was preceded by public hearing lasting approximately thirty minutes.

33.     Upon information and belief, neither the Commission nor the Attorney General's office published any position paper, or explained in writing the other possible ways to remedy what it stated to be the need to meet its obligation to protect the public for what was described in the policy statement as Covid misinformation.

**The Commission's Prosecution of Plaintiffs Eggleston and Siler**

*Plaintiff Eggleston case:*

34.     Plaintiff Richard Eggleston was a board-certified ophthalmologist until his retirement more than 10 years ago, but still maintains his Washington medical license.

35.     In January 2021, Plaintiff entered a four-year contract with the *Lewiston Tribune* to provide a conservative-oriented monthly opinion column, for the nominal sum of $25.00 per column.  Plaintiff writes on a variety subjects. However, in 2021 most of his columns dealt with Covid and the Government's response to the pandemic. Plaintiff Eggleston opposes Covid mandates, believes, and opines that the risk benefit profile is unfavorable for some subsets of the population. He advocated in favor of off-label treatments such as Ivermectin, and against the lockdowns. In his columns, he often cites government statistics and given his take or opinions on the meaning of those statistics. His opinions are at odds with what is published in the mainstream media.

36.     In fact, it was the purpose and objective of the publisher of the paper for

FIRST AMENDED COMPLAINT        - 12

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

Plaintiff to express his more conservative viewpoint to the paper's readership.

37.    In or about late 2021, the Commission commenced an investigation concerning his opinion pieces and asked him to explain his views. He did so and related other of his opinions about the pandemic.

38.    On August 4, 2022, the Commission charged Plaintiff with professional misconduct based on his opinion pieces published in the *Lewiston Tribune*, on the stated grounds that they constitute a violation of RCW 18.130. 180 (1) as an act of "moral turpitude, dishonesty, or corruption relating to the person's profession…." (13) Misrepresentation or fraud in any aspect of the conduct of the business of profession." and (18) "interference with an investigation or disciplinary proceeding by willful misrepresentation of facts before the disciplinary authority or its authorized representations…." The latter charge is based on Plaintiff's statements that he made in response to the Commission's request that he provide a response and justification for the positions he took in his opinion articles.[8]

39.    By mutual agreement with the publisher of the *Lewiston Tribune*, after the Commission filed its statement of charges against him, Dr. Eggleston agreed to only

---

[8]    The Commission's hearing was scheduled to commence on May 23, 2023. However, after an Asotin County superior court denied Eggleston's motion for a preliminary injunction (*Eggleston v. Washington Medical Commission*, 23-0006902), a state appellate court commissioner stayed the hearing pending determination of the appealability of the superior court's denial of a preliminary injunction to enjoin the hearing. However, the case is being returned to the Superior Court after the appellate court panel overturned the appellate court commissioner's determination that the case was amenable to discretionary review. (*Eggleston v. WMC,* Cause No. 397319). As of the date of the filing of this complaint, the state court action is pending. However, the state court case only contains a claim for relief under the Washington state Constitution's Free Speech clause.

FIRST AMENDED COMPLAINT        - 13

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

write rebuttals to other editorials about Covid. *See, e.g.*, his opinion pieces from January 2021, until February 2024:

https://www.lmtribune.com/search/?f=html&q=richard+eggleston&s=start_time&sd=desc&l=25&t=article%2Ccollection%2Cvideo%2Cyoutube&nsa=eedition.

40.    The Commission's prosecution of him for the content and viewpoint of his opinion pieces has directly and irreparably injured his First Amendment free speech rights, as well as the First Amendment rights of the other Plaintiffs and all Washington residents who may want to read, but no longer have unfettered access to Plaintiff Eggleston's information and opinions on Covid health policy, the safety and efficacy of off-label drugs, as well as the harm caused by lockdowns.

*Plaintiff Siler's Case:*

41.    Plaintiff Thomas T. Siler M.D. is a retired Washington physician.[9] From February to October 2021, he wrote a series of posts in AmericanThinker.com, ("AT") which is self-described as a "community for the civil and thoughtful discussion of issues. AT is not a chatroom; it is a discussion forum."

42.    Dr. Siler's posts were about Covid, and the safety and efficacy of the mRNA shots (A Doctor's View about the New mRNA vaccine," February 15, 2021), ("What Questions Must We Ask About Vaccination for Children" 10/26/2021), and the efficacy of PCR testing. He also questioned the Covid narrative core principle, that the recommendations put out by the CDC were evidence based.  (Plaintiff Siler's post can be found at:  https://www.americanthinker.com/author/thomassiler/.)

43.    Based on these discussion forum posts, the Commission investigated him. On October 23, 2023, he was charged him with professional misconduct under RCW

---

[9]    Dr. Siler had been board certified in internal medicine for several decades. However, his board certification was removed for Covid misinformation by the private certifying American Board of Internal Medicine, whose actions are not constrained by the First Amendment as the Defendants actions are.

FIRST AMENDED COMPLAINT        - 14

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

18.130. 180 (1) ("any act involving moral turpitude, dishonesty, or corruption relating the practice of the person's profession…." And (13) "Misrepresentation or fraud in any aspect of the conduct of the business or profession." The statement of charges alleges that some statements in these posts were made "reckless disregard of the truth that promulgated misinformation regarding the SARS-CoV-2 virus and treatments for the virus" (Statement of charges, page 1 para 1.5).

44.     Upon information and belief, there is no Washington statute or code section which creates a physician disciplinable offense for recklessly disregarding the "truth" in a physician's public speech. The Commission may have borrowed the phrase from the heightened burden of proof for the civil defamation of a public figure.

## FIRST CLAIM FOR RELIEF

**ALL PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT THAT DEFENDANTS' FUTURE INVESTIGATIONS, PROSECUTIONS AND SANCTIONING OF PHYSICIANS FOR THEIR PUBLIC/SOAPBOX SPEECH AGAINST THE PUBLIC HEALTH NARRATIVE VIOLATES THEIR FIRST AMENDMENT RIGHT TO ACCESS THE PROTECTED SPEECH OF WASHINGTON PHYSICIANS, AND IS SUBJECT TO INJUNCTIVE RELIEF**

45.     Plaintiffs repeat and reallege the foregoing allegations.

46.     The First Amendment provides in relevant part: "Congress shall make no law... abridging the freedom of speech." The First Amendment applies to actions by state agencies such as the Boards via the Fourteenth Amendment.

47.      Along with the right to free speech is the right of citizens hear protected speech.  All Plaintiffs have the right hear the views of any Washington licensed physician who may choose to speak out against the public health Covid narrative, and who because of that speech, may be investigated, prosecuted, or sanctioned by the Defendants.

48.      The loss of that access to protected speech would be an injury in fact, caused by the Defendants and redressable by the Courts.

49.     The history of the Defendants' prosecutions of physicians who spoke out

FIRST AMENDED COMPLAINT      - 15

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

against the public health narrative including the prosecution of Plaintiffs Eggleston and Siler, and the continued prosecution of doctors despite the end of the pandemic, creates an actual threat to Plaintiffs' First Amendment rights to receive information.

50.    Accordingly, Plaintiffs request injunctive relief barring the Defendants from commencing any future investigation or prosecution of physicians based on the physicians' public/soapbox speech.

## SECOND CLAIM FOR RELIEF

**ALL PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT THAT DEFENDANTS' CURRENT INVESTIGATIONS, PROSECUTIONS AND SANCTIONING OF PHYSICIANS FOR THEIR PUBLIC/SOAPBOX SPEECH AGAINST THE PUBLIC HEALTH NARRATIVE VIOLATES THEIR FIRST AMENDMENT TO SPEAK AND THE RIGHT TO ACCESS THE PROTECTED SPEECH OF WASHINGTON PHYSICIANS, AND IS SUBJECT TO INJUNCTIVE RELIEF**

51.    Plaintiffs repeat and reallege the foregoing allegations.

52.    The individual physician plaintiffs and the Washington licensed physician members of organizational Plaintiffs CHD (including its Washington chapter), have a First Amendment right to express their views and criticisms of the mainstream Covid narrative to the public.

53.    The Defendants' investigation, prosecution, and sanctioning of physicians disseminating for so-called "Covid misinformation" to the public via the guise/pretext/transformation of protected speech into professional acts of moral turpitude, fraud or misrepresentation violates the First Amendment rights of physicians.

54.    The Commission's tactic of transforming protected speech into medical board regulatable professional conduct is simply the latest iteration of the "professional speech doctrine" which has been rejected by the Supreme Court in *Nat'l Inst. Advocates & Life Advocates v. Becerra* ("*NIFLA*") 138 S. Ct. 2361, 2371-2373 (2018).

55.    The Defendants' actions also violate the long judicially acknowledged rights of all Plaintiffs to receive this First Amendment protected information from physicians.

FIRST AMENDED COMPLAINT        - 16

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

The alleged First Amendment violations are subject to the Court's strict scrutiny because they are both content and viewpoint based. Assuming arguendo, (if not counterfactually), there had been a compelling state interest to restrict physician soapbox speech, that compelling interest expired with the declared the end of the pandemic and the termination of the emergency status by the states. There is no evidence that Defendants or the Commission members considered and rejected other less invasive methods to achieve its stated goal of protecting the public.   Based on the foregoing, the actions of the Defendants complained of herein violate the Plaintiffs' First Amendment rights and justify the relief requested.

56.    Finally, Plaintiffs allege that based on Circuit authority, including a recent case in which Defendant Ferguson was a party, the actions of the Defendants in prosecuting physicians for their public/soap box speech are "flagrantly unconstitutional," thereby nullifying any jurisprudential comity abstention consideration that might otherwise apply. See *Tingley v. Ferguson*, 47 F.4th 1055, 1072-73 (9th Cir. 2022)[10].  *Pickup v. Brown*, s*upra* 740 F.3d at 1227-1228 cites with approval many examples in which courts and a commentor said that the government simply cannot regulate the public speech of physicians even if it the speech is contrary to the views of the medical establishment. This is the essence of what the Defendants are alleging in these Covid misinformation prosecutions, dressed-up in "moral turpitude" and "misrepresentation" negative descriptors. But they are all just the same type of disagreements among professionals which every court has said is not within the Constitutional authority of the medical boards. A close examination of the specific and extensive language from *Pickup* clearly shows that the Defendants actions are flagrantly unconstitutional.[11]

---

[10] "[in *Pickup v Brown*] We held that "public dialogue" by a professional is at one end of the continuum and receives the greatest First Amendment protection. *Id.*

[11]       "At one end of the continuum, where a professional is engaged in a public

FIRST AMENDED COMPLAINT       - 17

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

1

2

_____

3   dialogue, First Amendment protection is at its greatest. Thus, for example, a doctor who

4   publicly advocates a treatment that the medical establishment considers outside the

5   mainstream, or even dangerous, is entitled to robust protection under the First

6   Amendment—just as any person is—even though the state has the power to regulate

7   medicine. *See Lowe v. SEC,* 472 U.S. 181, 232, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985)

8   (White, J., concurring) "Where the personal nexus between professional and client does

9   not exist, and a speaker does not purport to be exercising judgment on behalf of any

10  particular individual with whose circumstances he is directly acquainted, government

11  regulation ceases to function as legitimate regulation of professional practice with only

12  incidental impact on speech; it becomes regulation of speaking or publishing as such,

13  subject to the First Amendment's command that 'Congress shall make no law ...

14  abridging the freedom of speech, or of the press.' "); Robert Post, *Informed Consent to*

15  *Abortion: A First Amendment Analysis of Compelled Physician Speech,* 2007 U. Ill.

16  L.Rev. 939, 949 (2007) ("When a physician speaks to the public, his opinions cannot be

17  censored and suppressed, even if they are at odds with preponderant opinion within the

18  medical establishment."); *cf. Bailey v. Huggins Diagnostic & Rehab. Ctr., Inc.,* 952 P.2d

19  768, 773 (Colo.Ct.App.1997) (holding that the First Amendment does not permit a court

20  to hold a dentist liable for statements published in a book or made during a news

21  program, even when those statements are contrary to the opinion of the medical

22  establishment). That principle makes sense because communicating to the *public* on

23  matters of *public concern* lies at the core of First Amendment values. *See, e.g., Snyder*

24  *v. Phelps,* —— U.S. ——, 131 S.Ct. 1207, 1215, 179 L.Ed.2d 172 (2011) ("Speech on

25  matters of public concern is at the heart of the First Amendment's protection." (internal

26  quotation markets, brackets, and ellipsis omitted)). Thus, outside the doctor-patient

27  relationship, doctors are constitutionally equivalent to soapbox orators and

28  pamphleteers, and their speech receives robust protection under the First Amendment."

FIRST AMENDED COMPLAINT        - 18

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

57.     Based on *Tingley* and *Pickup,* the Defendants should be deemed to be on notice that their attempts to sanction public speech are flagrantly unconstitutional. However, the history showing the flagrant unconstitutionality of Defendants actions goes all the way back to Justice Jackson's 1945 opinion in *Thomas v. Collins* (quoted at page 3 footnote 1 *supra*), through Justice White in *SEC v Lowe* (quoted at page 18 footnote 11) forty years later, restated in cases and a commentator from the 1990's onwards, to *Pickup* and *Tingley.*

58.     In sum, for almost eighty years the courts have told government officials that they cannot regulate the public/soapbox speech of professions because of the First Amendment. Less than two years ago, the Ninth Circuit delivered the same message to the Defendants. Their failure to heed that message by continuing to prosecute physicians by mischaracterizing professional disagreements during a rapidly evolving pandemic, and even after pandemic ended, as a matter of law constitutes flagrant unconstitutional action on their part, rendering deference, comity, and abstention unwarranted.

## THIRD CLAIM FOR RELIEF

**ALL PLAINTIFFS REQUEST FOR A DECLARATORY JUDGMENT THAT RCW 18.130.180 (1) AND (13) ARE FACIALLY UNCONSTITUTIONALLY, OVERBROAD AND/OR UNCONSTITUTIONALLY VAGUE, AND SUBJECT TO INJUNCTIVE RELIEF**

59.      Plaintiffs repeat and reallege the foregoing allegations.

60.     The Defendants claim to have the statutory authority to reach Plaintiffs' (and all the Commission's licensees') pure/soapbox speech based on RCW 18.130.180 (1) which provides it jurisdiction over an act of "moral turpitude, dishonesty, or corruption relating to the person's profession…" and (13) "Misrepresentation or fraud in any aspect of the conduct of the business or profession." Meaning that a licensee's expressing opinions about Covid, or asserting facts which the Commission decides are untrue is an act of moral turpitude, dishonesty, corruption, or fraud in the conduct of the business or profession.

FIRST AMENDED COMPLAINT      - 19

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

61.     Defendants' interpretation of RCW 18.130.180 is unconstitutionally overbroad, vague, or is facially unconstitutional, insofar as it reaches fully protected speech which is either a *per se* violation of the First Amendment, or fails strict scrutiny. Plaintiffs seek a declaratory judgment and a preliminary and permanent injunction based on overbreadth principles in that the Defendants are unconstitutionally regulating fully protected speech which renders the purported statutory justification either facially unconstitutional, overbroad, or unconstitutionally vague under Ninth Circuit authority. *California Teachers Ass'n v. St. Bd. of Educ*, 271 F.3d 1141, 1149 (9th Cir. 2001), *Foti v. City of Menlo Park,* 146 F.3d 629,  10 (9th Cir. 1998) and *United States v. Wunsch,* 84 F.3d 1110 (9th Cir. 1996).

### FOURTH CLAIM FOR RELIEF

**PLAINTIFFS EGGLESTON, SILER, AND MOYNIHAN REQUEST FOR A DECLARATORY JUDGEMENT THAT THE COMMISSION'S INTERPRETATION OF ITS LAWS (RCW 7.24.146, 34.05 ET SEC AND WAC 246-11-480) VIOLATE THEIR FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS AND REQUEST FOR INJUNCTIVE RELIEF**

62.     Plaintiffs Eggleston, Siler and Moynihan repeat and reallege the foregoing allegations.

63.     Based on the litigation in *Eggleston v. Washington Medical Commission*, ("WMC") Defendants assert that under Washington law, there is no pre-administrative hearing recourse to remedy the Commission's alleged violation of the physicians' free speech rights.

64.     Specifically, Defendants argue that 1. Washington law does not permit a respondent in an administrative proceeding to file a declaratory judgment action under RCW 7.24.145, during the pendency of a Medical Commission administrative proceeding, 2. An administrative law judge in an RCW 34.05 *et. seq*. hearing does not have the statutory authority to rule on the constitutionality of an administrative agency's action under WAC 246-11-480 (4), and 3. The only recourse a physician has is to raise a

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

constitutional claim after the administrative action is final and in an appeal in a superior court, notwithstanding the fact that Washington law provides an exception to the failure to exhaust administrative remedies per RCW 34.05. 534 (c)(1)-(3).

65.    Assuming arguendo that the Defendants' interpretation of the above statutes and regulation is correct, those laws and rule violate the federal procedural and substantive due process rights of Plaintiffs Eggleston, Siler, Moynihan, and all Washington physicians.

66.    Plaintiffs' First Amendment rights of free soapbox speech is a fundamental right. Free speech jurisprudence holds that the government's likely violation of First Amendment rights constitutes irreparable injury, even for a short period of time, and is curable via a federal court preliminary injunction. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *S.O.C., Inc. v. County of Clark*, 152 F.3d. 1136, 1148 (9th Cir. 1998).

67.    State preliminary injunction jurisprudence (*Beauregard v. Wash. State Bar Ass'n,* 197 Wash.2d 67, 72, 480 P.3d 410, 414 (Wash. 2021) does not recognize, and in fact is inconsistent with the expeditious hearing and cessation of likely governmental First Amendment violations as established by *Elrod* and other federal cases.[12]

68.    First Amendment substantive rights and the process for protecting those rights allow and indeed require that upon the requisite showing of a First Amendment violation, the government infringement should be immediately enjoined pending a final decision on the merits.

69.    The state is not free to continue to violate Plaintiff physicians' fundamental rights by requiring the physician to justify his/her protected speech in a state

---

[12]    "A party seeking preliminary injunctive relief must establish (1) a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of either have or will result in actual and substantial injury. (Citations omitted.)" *Beauregard v. Wash. State Bar Ass'n*, 197 Wash.2d at 72, 480 P.3d at 414 (Wash. 2021).

FIRST AMENDED COMPLAINT        - 21

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

administrative proceeding, thereby delaying the vindication of these rights until after the state has adjudicated what it has no right to judge. [13]

70.    Accordingly, the state court statutes and state preliminary injunction requirements, as interpreted by the Defendants, violate procedural and substantive due process. The Defendants' actions also run afoul of the spirit if not the letter of pre-administrative hearing access to the courts that raise fundamental constitutional issues, per *Axon Enterprises v. FTC*, 143 S. Ct. 890 (2023).[14]

71.    The individual physician plaintiffs seek declaratory relief, as well as preliminary and permanent injunctive relief based on the state law and state actions which violate the substantive and procedural due process rights of these Plaintiffs.

### REQUEST FOR RELIEF

WHEREFORE Plaintiffs seek judgment as follows:

1.    A declaration that the Defendants' future investigation, prosecution, and

---

[13]    Pure speech does not lose its protection based on the allegation that it is false or misleading or even if it is false. *United States v. Alvarez*, 567 U.S. 709 (2012).

[12]    The *Axon* decision addressed the same basic problem as in this claim, namely the adjudication of a fundamental claim against an agency that only provides for consideration of that claim after the conclusion of the administrative process.

> And—here is the rub—it is impossible to remedy once the proceeding is over, which is when appellate review kicks in. Suppose a court of appeals agrees with Axon, on review of an adverse FTC decision, that ALJ-led proceedings violate the separation of powers. The court could of course vacate the FTC's order. But Axon's separation-of-powers claim is not about that order; indeed, Axon would have the same claim had it won before the agency. The claim, again, is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker. And as to that grievance, the court of appeals can do nothing: A proceeding that has already happened cannot be undone. Judicial review of Axon's (and Cochran's) structural constitutional claims would come too late to be meaningful.

*Id.* at 903-04.

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

sanctioning Washington physicians based on the physician's public/soapbox speech about the subject and viewpoint concerning Covid which is not consistent with the approved Covid narrative violates the rights of the Plaintiffs to hear dissenting information. All Plaintiffs seek preliminary and permanent injunctive relief barring the Defendants from commencing any future investigation or prosecution of a physician based on the physician's protected speech to the public.

2.    A declaration that the Defendants' current investigations, prosecutions, and sanctioning of Washington physicians based on the physician's public/soapbox speech about the subject and viewpoint concerning Covid which is not consistent with the approved Covid narrative violates physicians' First Amendment rights of public speech, as well as the rights of the Plaintiffs to hear the dissenting information from physicians. All Plaintiffs seek preliminary and permanent injunctive relief barring the Defendants from continuing all current investigations and prosecutions, of physicians based on the physicians' protected speech to the public.

3.    A declaration that the Defendants' interpretation of RCW 18.130.180 violates the First Amendment free speech rights of physicians and their listeners, and is unconstitutionally overbroad, subject to facial challenge and/or is unconstitutionally vague, and appropriate injunctive relief.

4.    The physician Plaintiffs seek a declaration that the Defendants' interpretation of the Commission's statutes violates the substantive and procedural due process rights of Washington licensed physicians, and request preliminary and permanent injunctive relief enjoining all Commission investigations, prosecutions and sanctioning based on the physician's protected speech.

//
//
//
//
//
//
//

FIRST AMENDED COMPLAINT        - 23

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

1       5.    Attorneys' fees as allowed by law, and such other and further relief as the

2  Court deems just and proper.

3       Dated: April 9, 2024

4                                      Respectfully submitted,

5                                      /s/Richard Jaffe

6                                      RICHARD JAFFE, ESQ.

7                                      Pro hac vice admitted
                                    428 J Street, 4th Floor

8                                      Sacramento, California 95814

9                                      Tel: 916-492-6038
                                    Fax: 713-626-9420

10                                     Email: rickjaffeesquire@gmail.com

11 

12                                     /s/Robert F. Kennedy, Jr.
                                    ROBERT F. KENNEDY JR., ESQ.

13                                     Subject to pro hac vice admission
                                    48 Dewitt Mills. Rd.

14                                     Hurley, NY 12433

15                                     Tel: 845-481-2622

16                                     /s/Todd S. Richardson

17                                     TODD S. RICHARDSON, ESQ.
                                    LAW OFFICES OF TODD S.

18                                     RICHARDSON, PLLC

19                                     604 Sixth Street

20                                     Clarkston, WA 99403
                                    Tel: 509-758-3397

21                                     Fax: 509-758-3399

22                                     WSBA 30237
                                    Attorneys for the Plaintiffs

23

24

25

26

27

28

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2024 I electronically filed this Plaintiffs'
First Amended Complaint in the Eastern District of Washington CM/ECF system which
will send notification of such filing to all parties who are registered with the CM/ECF
system.

DATED this 9th day of April, 2024

_____

Richard Jaffe

FIRST AMENDED COMPLAINT        - 25

RICHARD JAFFE, ESQ.
428 J Street, 4th Floor
Sacramento, California 95814